IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SHARON FREEMAN et al., | § | No. 1:23-cv-1295 |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| CRIMINAL JUSTICE, and OFFICERS | § | |
| DOE 1–100, | § | |
| Defendants. | § | |
| | § | |

ORDER GRANTING MOTION TO TRANSFER

Before the Court is Defendant Texas Department of Criminal Justice's ("Defendants" or "TDJC") Motion to Transfer Venue filed on November 22, 2023. (Dkt. # 14.) Plaintiffs Sharon and Mark Freeman ("Plaintiffs") filed a Response in Opposition on November 29, 2023. (Dkt. # 17.) Defendants did not reply.

The Court held a hearing on April 11, 2024. After careful consideration of the memoranda and exhibits filed in support of and in opposition to the motion and the oral advocacy at the hearing, the Court—for the reasons that follow—**GRANTS** Defendants' Motion to Transfer. (Dkt. # 14.)

BACKGROUND

Plaintiffs Sharon and Mark Freeman ("Plaintiffs") are the parents of Phillip Freeman ("Freeman"), a former TDJC inmate. (Dkt. # 1 at ¶¶ 1-4.) On

1

February 14, 2022, Freeman committed suicide while incarcerated at the Texas Department of Criminal Justice ("TDCJ") Hughes Unit in Gatesville, Coryelle County, Texas.  (Id. at ¶17.)  Plaintiffs filed this suit on October 24, 2023, on their own and Freeman's behalf, asserting violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Eighth Amendment.  (Id.)  Plaintiffs bring the ADA and RA claims against TDCJ.  (Id. at ¶¶ 81–90.)  Plaintiffs also bring the Eighth Amendment claims against six named defendants[1] and the Doe Defendants, the "correctional officer or officers, if any, assigned to watch Phillip and Phillip's housing area at the Hughes Unit on or about February 14, 2022 at 10:11 p.m."  (Id. at ¶¶ 21, 114, 126.)  TDJC answered Plaintiffs' Complaint on November 16, 2023.  (Dkt. # 9.)

Plaintiffs filed a Motion for Expedited Discovery on October 24, 2023. (Dkt. # 4.)  The Court granted Plaintiffs' Motion for Expedited Discovery on November 30, 2023.  (Dkt. # 18.)

TDCJ filed a Motion to Transfer on November 22, 2023.  (Dkt. # 14.) Plaintiffs responded in opposition on November 29, 2023.  (Dkt. 17.)  Plaintiffs then amended their complaint on February 9, 2024.  (Dkt. # 24.)

## LEGAL STANDARD

---

[1] The named defendants are Angel Ramirez, Edward Summers, Hector Santiago, and Jesse Gonzales, Garth Parker, and Bruce Armstrong II.  (Dkt. # 1 at 2–3.)

28 U.S.C. Section 1404(a) "allows a district court to transfer any civil action to any other district or division where it might have been brought when the convenience of parties and witnesses and the interest of justice so require." In re TikTok, Inc., 85 F.4th 352, 357 (5th Cir. 2023) (quoting Bechuck v. Home Depot U.S.A., Inc., 814 F.3d 287, 293 (5th Cir. 2016)) (internal quotation marks omitted). A court may grant transfer under Section 1404(a) only if the moving party "clearly establishes good cause" by "clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." In re Kevin Clarke, No. 24-50079, Doc. 51-1, at 5 (5th Cir. Mar. 1, 2024) (quoting Def. Distrib. v. Bruck, 30 F.4th 414, 433 (5th Cir. 2022)). The moving party bears the burden to establish good cause. Id.

To establish good cause, the moving party must clearly demonstrate that its chosen venue is clearly more convenient, not just that it "is more likely than not to be more convenient." Id. A preponderance of the evidence is not enough. Def. Distrib., 30 F.4th at 433. "[T]he fact that litigating would be more convenient for the defendant elsewhere" is not alone enough to justify a transfer. Id.

## DISCUSSION

"The threshold inquiry when determining eligibility for transfer is 'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed,' or whether all parties consent to a

particular jurisdiction." <u>Savage v. Detroit Indep. Sch. Dist.</u>, No. 4:22-CV-00202, 2023 WL 3981266, at *2 (E.D. Tex. June 13, 2023) (quoting <u>In re Volkswagen AG</u>, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I")).  The parties do not dispute that this case could have been brought in either the Austin or Waco Division of the Western District of Texas.

To establish good cause and justify a transfer, the moving party must show "(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious…that those marginal gains will *actually* materialize in the transferee venue." <u>Clarke</u>, No. 24-50079, Doc. 51-1, at 5 (emphasis in original).  In assessing whether the moving party has met this burden, the court considers four private-interest factors and four public-interest factors. <u>TikTok</u>, 85 F.4th at 358.

The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses, (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." <u>In re Volkswagen of Am., Inc.</u>, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("Volkswagen II")) (cleaned up).  The public interest factors are: "(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the

law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws … [or] the application of foreign law." Clarke, No. 24-50079, Doc. 51-1, at 5 (quoting TikTok, 85 F.4th at 358).

No single factor is dispositive, and the Fifth Circuit has "cautioned against a raw counting of the factors that weighs each the same." Id. (internal quotation marks omitted).  When the moving party fails to make a clear demonstration on a factor, the district court "cannot weigh [that] factor against the non-movant and in favor of transfer." Id. (quoting Def. Distrib., 30 F.4th at 434). The Court addresses each factor in turn.

    I.    <u>Private-Interest Factors</u>

        A. <u>Relative Ease of Access to Sources of Proof</u>

"The first factor focuses on the location of documents and physical evidence relating to the case." TikTok, 85 F.4th at 358 (quoting Volkswagen II, 545 F.3d at 316) (internal quotation marks omitted).  "The question is relative ease of access, not absolute ease of access." In re Radmax, Ltd., 720 F.3d 285, 288 (5th Cir. 2013) (per curiam).  If the current district does not have evidence relating to a case, this factor favors transfer. TikTok, 85 F.4th at 358 (citing Volkswagen II, 545 F.3d at 316).  The availability of evidence electronically minimizes the weight of this factor on the transfer analysis. Id. at 358–59 (citing In re Planned Parenthood Fed'n Am., Inc., 52 F.4th 625, 630 (5th Cir. 2022)).

Plaintiffs argue that "TDCJ's offices including legal offices where records directly related to this case are stored in Austin, Texas." (Dkt. # 24 at 4.) Defendants argue that "none of the operative facts occurred in the [Austin] division." (Dkt. # 14 at 5.) The Court cannot find this factor favors transfer. Defendants do not make a clear showing on this factor. Plaintiffs only address this factor in passing in their complaint. The question is relative ease of access. Neither party makes a particularly strong showing and the Divisions are geographically close. And while the records may be located in the Austin Division, the prison where the event took place is in the Waco Division. The Court therefore finds that the relative ease of access to the evidence between the Divisions is equal, so this factor is neutral.

### B. Availability of Compulsory Process to Secure Witness Attendance

"The second factor focuses on the availability of compulsory process to secure the attendance of witnesses." TikTok, 85 F.4th at 360 (quoting Volkswagen II, 545 F.3d at 315) (internal quotation marks omitted.) This factor favors transfer when the current district does not have subpoena power over non-party witnesses but the proposed venue does "enjoy absolute subpoena power for both depositions and trial. Id. (quoting Volkswagen II, 545 F.3d at 316). "[T]he availability of compulsory process receives less weight when it has not been

alleged or shown that any witness would be unwilling to testify." Id. (quoting

Planned Parenthood, 52 F.4th at 630–31 (internal quotation marks omitted)).

Neither party makes an argument on this factor.  As the transfer would

be from one close division within the Western District to another, the Court finds

this factor is neutral as both divisions have the same subpoena power over non-

party witnesses.

C. Cost of Attendance for Willing Witnesses

Testifying imposes external costs on witnesses, even those willing to

testify.  "It is more convenient for witnesses to testify at home…." TikTok, 85

F.4th at 361.  "[A]dditional distance means additional travel time ... meal and

lodging expenses," additional time "witnesses must be away from their regular

employment," and increased "personal costs associated with being away from

work, family, and community." Id.  This factor "attempts to internalize and

minimize" these costs by "favoring the venue that is more convenient from the

perspective of willing witnesses." Clarke, No. 24-50079, Doc. 51-1, at 15 (citing

TikTok, 85 F.4th at 361; Volkswagen II, 545 F.3d at 317).

The Fifth Circuit has adopted distance as the metric for convenience.

Id.  The factor of inconvenience "positively and linearly scales" with the distance

over one hundred miles witnesses must travel to testify. Id.  (citing TikTok, 85

F.4th at 361–62 & nn. 8–9).

Defendants argue that transferring the case to the Waco Division would "increase the convivence for both party and non-party witnesses.  (Dkt. # 14 at 4.)  According to Defendants, "[t]he Doe Defendants and any potential non-party fact witnesses work in Coryell County, and that is also presumably where most (if not all) of them [sic] reside."  (Id.)  Transferring to Waco would half the travel time, eliminate lodging costs, and alleviate staffing concerns at the Hughes Unit by decreasing the time witnesses would need to miss work.  (Dkt. # 14 at 4–5.) Defendants also argue the transfer would not prejudice Plaintiffs, who reside in Montgomery County, which is 170 miles from Austin and 160 miles from Waco. (Id. at 5.)

Plaintiffs argue that "at least some of the known witnesses have moved on from Coryelle, and historically TDCJ witnesses have often found it more convenient to appear in Austin than the court nearest their residence."  (Dkt. # 17 at 1.)  For instance, Plaintiffs state that Bruce Armstrong II was the senior warden at the Hughes Unit at the time of Freeman's suicide, but the Hughes Unit Directory shows that he is no longer assigned as the senior warden there.  (Id. at 3.)

The Court first notes that the transfer from the Austin Division to the Waco Division does not meet the 100-mile threshold the Fifth Circuit has traditionally applied in considering this factor.  Even so, the Court finds it appropriate to consider the increased burden on witnesses to testify in Austin rather

than Waco, especially since Plaintiffs' "choice of forum is diminished where, as here, a plaintiff brings suit outside his home forum." See Noble v. Geo Group, Inc., No. A-07-CA-968, 2008 WL 2609208, at *4 (W.D. Tex. June 27, 2008).

Plaintiffs' home forum is the Southern District of Texas, specifically the Houston Division. With the travel time to Austin and Waco from Houston being nearly the same, Plaintiffs will suffer no prejudice from a transfer. Additionally, Defendants seek a transfer within the Western District of Texas. Plaintiffs would still be afforded the District they chose, with a change in the Division only.

Defendants also make a strong argument that the Waco division is clearly more convenient for the witnesses currently identified. Defendants establish that the witnesses presently will suffer decreased travel costs, lodging costs, and time away from work if required to testify in Waco instead of Austin. (Dkt. # 14 at 3–5.) While the geographical difference between the divisions may be "granular" in Plaintiffs' eyes, Plaintiffs base their entire argument on the fact that there are "likely to be witnesses… for whom traveling to Austin will be more convenient" based on past cases involving TDCJ. (Dkt. # 17 at 4.) Defendants have specified that the non-party witnesses working at the Hughes Unit will find it considerably more convenient to testify in the Waco Division. The Court cannot

find this factor weighs against transfer based on the cost of attendance for Plaintiffs' hypothetical witnesses.  The Court finds this factor favors transfer.

### D. All Other Practical Problems

"The fourth factor considers all other practical problems that make trial of a case easy, expeditious and inexpensive." TikTok, 85 F.4th at 362 (quoting Volkswagen II, 545 F.3d at 315) (internal quotation marks omitted).  A court should not consider "garden-variety delay associated with transfer." Radmax, 720 F.3d at 289.  But if petitioners "inexcusably delayed" bringing their motion until "late in the litigation," this factor weighs against transfer. TikTok, 85 F.4th at 362 (quoting Planned Parenthood, 52 F.4th at 631).

Plaintiffs argue the "immediate, practical need to identify potential defendants weighs against transfer at this time." (Dkt. # 17 at 3.)  But the Court has since resolved this practical problem by granting Plaintiffs' Motion for Expedited Discovery on November 30, 2023.  (Dkt. # 18.)  Finding no other practical problems, the Court finds this factor is neutral.

## II. Public-Interest Factors

### A. Court Congestion

A Section 104(1) transfer cannot be granted solely based on court congestion. Clarke, No. 24-50079, Doc. 51-1, at 17.  A court's assessment of another's docket is inherently speculative and to transfer for this sole reason

"ignores the plaintiffs' role as master of the complaint."  Id.; see also Planned
Parenthood, 52 F.4th at 631 (acknowledging holdings characterizing court
congestion as a speculative factor).  "[M]easuring [docket] congestion is easier
said than done."  Clarke, No. 24-50079, Doc. 51-1, at 17.  While the transferor
court may be able to estimate the efficiency of its own docket, its assessment of a
transferee's docket is "at its core… an uninformed guess."  Id. at 17–18.

Plaintiffs argue the Austin Division, given its greater number of
judges, is less congested than the Waco Division.  (Dkt. # 17 at 1.)  Plaintiffs state
that "historically, more new case filings occur in Waco than Austin," citing to the
2021 case statistics.  (Id. at 5.)  First, 2021 was the first year since 2012 that Waco
had more new filings than Austin.  (Dkt. # 17-5 at 9.)  Second, given these
statistics are now three years old, the Court declines to rely on them to speculate
about the relative levels in congestion between the Austin and Waco divisions in
2024.

Even if the Court did speculate based on these statistics, the picture of
congestion is far from clear.  In 2021, Waco had 227 more new cases filed than the
Austin Division.  (Dkt. # 17-5 at 5.)  Even so, the ten-year report shows that 2021
was the first year in which the Waco division experienced more new case filings
than the Austin Division since 2012.  In 2020, Austin saw 61 more new cases filed
than Waco did, 451 more in 2019, and 786 more in 2018.  (Id. at 9.)  The number

of new cases filed each year does not speak to the full picture of court congestion. Cases often span multiple years before resolution.  And not all cases are equally complex, contentious, or demanding of court resources.

   The entire Western District, as Plaintiffs note, "has strained judicial resources."  (Dkt. # 17 at 1.)  The Court finds either division could handle Plaintiffs' case efficiently.  This factor should be neutral.  That said, Defendants do not address Plaintiffs' claims that the Waco division is more congested.  The Court finds this factor, especially since the transfer would be from one division to another, is neutral to weakly against transfer due to Plaintiffs' "role as the master of the complaint."  <u>Clarke</u>, No. 24-50079, Doc. 51-1, at 17.

  B. <u>Local Interests</u>

   The local interests public-interest factor considers "the local interest in having localized interests decided at home."  <u>Volkswagen II</u>, 545 F.3d at 315.  A court looks to "the significant connections between a particular venue and the events that gave rise to a suit," not to "the parties' [] connections to each forum." <u>TikTok</u>, 85 F.4th at 364 (quoting <u>Def. Distrib.</u>, 30 F.4th at 435 (internal quotation marks omitted)).  Put simply, "[w]e focus on the events—not the parties." <u>Clarke</u>, No. 24-50079, Doc. 51-1, at 9.

   "[T]he place of the alleged wrong is one of the most important factors in venue determinations."  <u>TikTok</u>, 85 F.4th at 364 (quoting <u>Def. Distrib.</u>, 30 F.4th

at 435.)  "[T]his factor weighs heavily in favor of transfer [when] ... there is no relevant factual connection to the [transferor district]." Volkswagen, 545 F.3d at 317–18.  And this factor weighs against transfer when the "citizens of [the transferor district] have a greater stake in the litigation than the citizens of [the transferee district]." TikTok, 85 F.4th at 364 (quoting Planned Parenthood, 52 F.4th at 632)).

When weighing the local-interest factor, a court should consider the "events that gave rise to the suit" and "the interest of non-party citizens in adjudicating the case." Clarke, No. 24-50079, Doc. 51-1, at 10 (quoting TikTok, 85 F.4th at 364 (cleaned up)).  A court may consider "the location of the injury, witnesses, and the [p]laintiff's residence," but these proxies for local interests "can never subsume the ultimate inquiry." Id. (quoting Def. Distrib., 30 F.4th at 435.)

Plaintiffs argue that "at least some of the known witnesses have moved on from Coryell, and historically TDCJ witnesses have often found it more convenient to appear in Austin than the court nearest their residence." (Dkt. # 17 at 1.)  But the court focuses on the events to determine local interests, not the parties, or current witness locations.  Witness location is only a proxy for local interests. Clarke, No. 24-50079, Doc. 51-1, at 10.

It is not disputed that the events giving rise to this lawsuit occurred entirely in Coryell County, which falls within the Waco Division. (Dkt. # 14 at 4;

13

Dkt. # 17 at 3 ("Plaintiffs' decedent did pass away in Coryell County due to the misconduct of people who worked there at the time…."))  "[C]ourts routinely transfer venue to the district and division where the prison is located."  (Dkt. # 14 at 3–4 (collecting cases.))  Absolutely none of the events underlying this suit happened in Austin.  Non-party citizens in Austin have a much lower interest in adjudicating this case than those in Waco who reside near the prison where the events took place.  Clarke, No. 24-50079, Doc. 51-1, at 10.  Underscoring the difference in interest is that the Austin Division has zero TDJC, while the Waco Division has five, including the prison where the events of this suit took place.  (Dkt. # 14 at 5.)  The Waco Division citizens therefore have a local interest in the outcome of this case that is much greater than non-party citizens in the Austin Division.  The Court finds that the local interest factor favors transfer to Waco Division.

C. Familiarity with Governing Law

A court also considers its "familiarity with the law that will govern the case."  Volkswagen, 545 F.3d at 315.  Familiarity with governing law weighs most heavily when "the [transferee] venue is in a different State [than the transferor court]—in which case that State's familiarity with the applicable law would be especially probative to the transfer analysis."  Planned Parenthood, 52 F.4th at 632 n.5.  For this factor, a district court examines the law it will have to apply in the

case, including whether it "would be bound to [the transferee court's] law concerning such claims." Def. Distrib., 30 F.4th at 436.

"This factor does not weigh in favor of transfer when both districts are 'equally capable of applying the relevant law.'" Tiktok, 85 F.4th at 365 (quoting Radmax, 720 F.3d at 289.))  The Fifth Circuit has "hesitated to find that this factor weighs in favor of transfer when there are no 'exceptionally arcane features of Texas ... law that are likely to defy comprehension by a federal judge sitting in [California].'" Id. (quoting Def. Distrib., 30 F.4th at 436 (cleaned up.))

Neither party makes an argument about this factor.  As the transfer would be from one division within the Western District to another, the Court finds this factor is neutral or against transfer, as both courts are "equally capable of applying the relevant law." Id. (quoting Radmax, 720 F.3d at 289.))

D. Avoiding Conflict of Law and Foreign Law Problems

The final public interest factor "seeks to avoid 'unnecessary problems of conflict of laws or in the application of foreign law.'" Def. Distrib., 30 F.4th at 436 (quoting Volkswagen II, 545 F.3d at 315).

Once more, this factor is neutral. A transfer from the Waco Division from the Austin Division will not resolve any problems with the application of foreign law or avoid an issue with conflict of laws.  Savage v. Detroit Indep. Sch. Dist., No. 4:22-CV-00202, 2023 WL 3981266, at *4 (E.D. Tex. June 13, 2023).

III.   <u>The Weight of the Factors Favors Transfer to the Waco Division</u>

      No single factor is dispositive, and the Court does not count the factors so that each weighs the same.  <u>Clarke</u>, No. 24-50079, Doc. 51-1, at 5.  To establish good cause and justify a transfer, the moving party must show "(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious…that those marginal gains will *actually* materialize in the transferee venue."  <u>Clarke</u>, No. 24-50079, Doc. 51-1, at 5 (emphasis in original).

      The Court finds that Defendants have made it plainly obvious that the marginal gains in local interest and in decreasing the cost of attendance for witnesses will actually materialize in the Waco Division.  The gain will also be significant—transferring to Waco will allow non-party witnesses from the Hughes division to eliminate lodging costs almost entirely, it will decrease the time away from work and family, and the transfer will allow non-party citizens with an actual interest in the case to decide it.  The prison where this tragic event took place is not in Austin.  The parties and non-party witnesses involved were not and are not in Austin.  The community impacted by this prison and the officers' actions is not in Austin.  While this case can properly be brought in Austin, Defendants have established it is clearly more convenient based on the private and public factors for it to be brought in Waco.

Moreover, only the court congestion factor possibly weighs against transfer. And as established above, this Court declines to speculate on the relative congestion of the Waco Division compared to the Austin Division. Additionally, court congestion alone should never be dispositive.

The Court finds the weight of the factors supports transfer.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Transfer. (Dkt. # 14.) It is therefore **ORDERED** that this case is **TRANSFERRED** to the Western District of Texas, Waco Division.[2]

**IT IS FURTHER ORDERED** that the answer deadline for all Defendants is extended to April 26, 2024.

Signed: April 12, 2024.

_____
David Alan Ezra
Senior United States District Judge

---

[2] In order to allow Plaintiffs the opportunity to seek a stay for the order, the Court offered to stay the case for a period of seven days from the date of this order. Plaintiffs stated this was not necessary.